Gregory J. BOWENS, a Michigan resident, Paula M. Bridges, an Illinois resident, Gary A. Brown, a Michigan resident, Robert B. Dunlap, a Michigan resident, Phillip A. Talbert, a Michigan resident, Plaintiffs,

v.

AFTERMATH ENTERTAINMENT, a California corporation, Amazon.com, Inc., a Delaware corporation, AOL Time Warner, Inc., a Delaware corporation, Philip J. Atwell, a California resident, Barnes & Noble, Inc., a Delaware corporation, Barnes & Noble.com, Inc., a Delaware corporation, Best Buy Co., a Minnesota corporation, Blockbuster, Inc., a Delaware corporation, Borders Group, Inc., a Michigan corporation, CDnow, Inc., a Pennsylvania corporation, Chronic 2001 Touring, Inc., a California corporation, Circuit City Stores, Inc., a Virginia corporation, John Doe Number One, John Doe Number Two, Eagle Rock Entertainment, PLC, a British corporation, Eagle Vision, Inc., a Delaware corporation, Germonimo Film Productions, Inc., a California corporation, Harmony House Records & Tapes, Inc., a Michigan corporation, Hastings Entertainment, Inc., a Texas corporation, HMV Media Group PLC, a British corporation, Honigman Miller Schwartz and Cohn, LLP, a Michigan limited liability partnership, House of Blues Concerts/Hewitt/ Silva, LLC, a California limited liability company, Ingram Entertainment Holdings, Inc., a Tennessee corporation, Interscope Records, Inc., a Delaware corporation, Ervin Johnson, a California resident, Magic Johnson Productions, LLC, a Delaware limited liability company, Metropolitan Entertainment Group, Inc., a New Jersey Corporation, Movie Gallery, Inc., a Delaware corporation, MTS, Inc.,/Tower Records, a California corporation, the Musicland Group, Inc., a Delaware corporation, Panavision, Inc., a Delaware corporation, Radio Events Group, Inc., an Arizona corporation, RED Distribution, Inc., a Delaware corporation, Phil Robinson, a California resident, William Silva, a California resident, Trans World Entertainment Corporation, a New York corporation, Kirdis Tucker, a Califor-

nia resident, Wherehouse Entertainment, Inc., a Delaware corporation, WH Smith PLC, a British corporation, and Andre Young, a California resident, jointly and severally, Defendants.

No. CIV. 02–40170.

United States District Court,
E.D. Michigan,
Southern Division.

March 28, 2003.

Gary A. Brown, Robert B. Dunlap, Phillip A. Talbert, plaintiffs.

Herschel P. Fink, Cynthia G. Thomas, Honigman, Miller, Detroit, MI, for After-Math Entertainment, AOL Time Warner, Inc., Philip J. Atwell, Barnes and Noble, Inc., Barnes and Noble.com, Inc., Best Buy Co., Blockbuster, Inc., Chronic 2001 Touring, Inc., Eagle Rock Entertainment, PLC, Eagle Vision, Inc., Geronimo Film Productions, Inc., HMV Media Group PLC, Honigman Miller Schwartz and Cohn, L.L.P., House of Blues Concerts/Hewitt/Silva, L.L. C., Ingram Entertainment Holdings, Incorporated, Interscope Records, Incorporated, Ervin Johnson, Magic Johnson Productions, L.L.C., Metropolitan Entertainment Group, Incorporated, MTS, Incorporated/Tower Records, Musicland Group, Incorporated, RED Distribution, Incorporated, Phil Robinson, William Silva, Trans World Entertainment Corporation, Kirdis Tucker, WH Smith PLC, Andre Young, defendants.

Thomas G. McNeill, Dickinson Wright, Detroit, MI, for Amazon.com, Inc., Borders Group, Inc., defendants.

Eric A. Michaels, Hertz, Schram, Bloomfield Hills, MI, for CDNow, Inc., defendant.

Howard Hertz, Eric A. Michaels, Hertz, Schram, Bloomfield Hills, MI, Steven M. Hayes, Parcher & Hayes, New York, NY, for Bertelsmann AG, defendant.

Stephen M. Kelley, Kelley, Casey, St. Clair Shores, MI, Douglas G. McCray, G.W. Caravas Assoc., Clinton Township, MI, Jayne L. Jakubaitis, Bricker & Eckler, Cleveland, OH, for Circuit City Stores, Inc., defendant.

Raymond L. Morrow, Kemp, Klein, Troy, MI, for Harmony House Records and Tapes, Inc., defendant.

David K. Tillman, Tillman & Tillman, Detroit, MI, Glenn D. Oliver, Detroit, MI, for Gregory J. Bowens, Paula M. Bridges,

John J. Lynch, III, C. Edward Hilde-brandt, Vandeveer Garzia, Troy, MI, for Hastings Entertainment, Inc., defendant.

Laurie J. Michelson, Butzel Long, De-troit, MI, for Movie Gallery, Inc., defendant.

M.J. Stephen Fox, Fox Assoc., Grand Rapids, MI, for Panavision, Inc., defendant.

John E. McSorley, Garan Lucow, De-troit, MI., for Wherehouse Entertainment, Incorporated, defendant.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court are the following motions: (1) Defendants' Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [docket entries 34, 38, 44, 65, 68, 73, 84, and 98][1]; (2) Plaintiffs' Second Motion for Leave to Amend the First Amended Complaint [docket entry 103]; (3) Defendant Musicland Group, Inc.'s Motion to Set Aside Clerk's Entry of Default [docket entry 107]; and (4) Defendants' Motion for Sanctions [docket entry 36].[2] The Court held a hearing in this matter on November 13, 2002. For the reasons set forth below, the Court shall deny Defendants' Motions to Dismiss, grant Plaintiffs' Second Motion for Leave to Amend the First Amended Complaint, grant Defendant Musicland Group, Inc.'s Motion to Set Aside Clerk's Entry of Default, and deny Defendants' Motion for Sanctions.

## I. BACKGROUND

On July 6, 2000, rap music artists Andre Young, Snoop Dogg, Ice Cube, and Eminem were scheduled to perform as part of the "Up in Smoke Tour" (the "Tour") at Joe Louis Arena in Detroit. (*See* Def. June 18, 2002 Br. at 2.)[3] Prior to arriving in Detroit, the Tour had performed in ten cities in the United States and Canada. (*See id.*) At each performance, the Tour played a short video (the "Video") to introduce the headline performers, Andre Young and Snoop Dogg. (*See id.*) At approximately 5:00 p.m. on July 6, 2000, and only hours before the concert was to begin,

---

**1.** The Motions to Dismiss all raise essentially the same or overlapping issues, and many of the Motions merely incorporate by reference the first-filed Motion [docket entry 34]. Therefore, the Court will address Defendants' Motions collectively.

The Court notes that the Motion to Dismiss filed by Defendants Bertelsmann AG and CDnow, Inc. [docket entry 73] challenged the Court's personal jurisdiction over Bertelsmann AG as well as the sufficiency of the First Amended Complaint. The issue of personal jurisdiction was resolved with the entry of a stipulated order dismissing Bertelsmann from this action [docket entry 92]. The Motion to Dismiss filed by Bertelsmann and CDnow, Inc. therefore remains pending only as to CDnow, Inc.'s challenge to the sufficiency of the First Amended Complaint.

The Court also notes that on January 21, 2003, Defendant Wherehouse Entertainment filed a petition under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").

Due to the imposition of the automatic stay, 11 U.S.C. § 362, which stays the proceedings against Wherehouse Entertainment in this Court, the Court will not adjudicate Wherehouse Entertainment's Motion to Dismiss [docket entry 86] at this time.

**2.** Not all Defendants have joined the motion for sanctions. However, for ease of reference, the Court will refer to this motion as "Defendants' Motion for Sanctions."

**3.** On a motion to dismiss, the Court presumes all well-pleaded factual allegations in the complaint to be true. While the Court adheres to this rule in deciding Defendants' Motions to Dismiss, the Court includes, for the purposes of background only, several relevant facts brought to light by Defendants and not included in the First Amended Complaint. At the hearing, Plaintiffs stated no specific objections to the Court's recitation of the background facts, which were essentially the same as those now set forth in this opinion.

officials from the City of Detroit including members of the Detroit Police Department ("City Officials") arrived at Joe Louis Arena and met with individuals associated with the Tour ("Tour Representatives"). (*See id.*) Citing various obscenity statutes, the City Officials demanded that the Video not be played during the performance. (*See id.* at 2–3.)

Plaintiffs allege that the meeting consisted of a private discourse (the "first discourse") between Plaintiffs Greg Bowens, press secretary to Detroit Mayor Dennis Archer, Gary Brown, a Commander in the Detroit Police Department, Paula Bridges, a Second Deputy Chief in the Detroit Police Department, and Defendants Phil Robinson, the on-site promoter representing Ervin Johnson and Magic Johnson Productions, Kirdis Tucker, the General Manager of Aftermath Entertainment, and Bill Silva, the President of House of Blues Concerts. (First Amended Complaint ("F.A.C.") ¶ 50.) Moreover, "[o]nly certain concert staff and City of Detroit officials were allowed in the meeting room." (F.A.C. ¶ 50.) Despite Bowens' explicit request for a private meeting, however, Tour Representatives, using hidden cameras and microphones, recorded the first discourse. (F.A.C. ¶ 52.) In addition, Tour Representatives used a secret camera and microphone to record a private discourse between Plaintiff Robert Dunlap, an officer in the Detroit Police Department, and Bob Fontenot, the tour's head of security (the "second discourse"). (F.A.C. ¶ 57.)

The audio and video recordings of the July 6, 2000, conversations between Plaintiffs and Tour Representatives were incorporated into a "Gangster Rap Concert DVD" (the "Concert DVD"), and advertised as "exclusive backstage footage." (F.A.C. ¶¶ 58, 62.) The backstage footage involving Plaintiffs was included in two "bonus" tracks on the Concert DVD entitled "The Detroit Controversy" and "Crew." (F.A.C. ¶ 67.) The Concert DVD is marketed, advertised, promoted, distributed, rented, and sold throughout the world. (F.A.C. ¶ 65.) Further, the Concert DVD "has become one of the hottest-selling music videos, achieving worldwide multi-platinum status." (F.A.C. ¶ 69.)

Plaintiffs filed the First Amended Complaint in this Court on April 24, 2002, naming, in addition to Tour Representatives Robinson, Tucker, and Silva, an array of media and entertainment companies, retailers, a Detroit law firm, and various other individuals as Defendants. The case was originally assigned to United States District Judge Avern Cohn but was transferred to the undersigned on June 20, 2002, pursuant to Local Rule 83.11(d).

In the First Amended Complaint, Plaintiffs alleged nineteen causes of action, only three of which remain before the Court at this time. In counts one, two, three, and four, Plaintiffs alleged violations of Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510, *et seq.* (the "Federal Wiretap Act" or "Act"). In counts five, six, seven, eight and nine, Plaintiffs alleged violations of the Michigan Eavesdropping Statutes, Michigan Compiled Laws § 750.539a *et seq.* In counts ten, eleven, twelve, thirteen, and fourteen, Plaintiffs alleged false light-invasion of privacy, misappropriation of Plaintiffs' likenesses, violation of the right of publicity, unjust enrichment, and restitution. In count fifteen, Plaintiffs alleged a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Finally, in counts sixteen, seventeen, eighteen, and nineteen Plaintiffs alleged fraud based on false representation, fraud based on failure to disclose facts, civil conspiracy, and aiding and abetting.

On July 15, 2002, this Court dismissed without prejudice Plaintiffs' state law

claims, declining to exercise supplemental jurisdiction over those claims. On August 23, 2002, United States Magistrate Judge Wallace Capel, Jr. granted in part Plaintiffs' Motion for Leave to Amend the First Amended Complaint, allowing Plaintiffs to withdraw their Federal Wiretap Act claim in count four and their Lanham Act claim in count fifteen. Therefore, only counts one, two, and three, each of which arises under the Federal Wiretap Act, remain before the Court.

Defendants' Motions to Dismiss and Plaintiffs' Second Motion for Leave to Amend the First Amended Complaint contain issues that substantially overlap. Therefore, the Court shall address these Motions together.

## II. DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT

### A. LEGAL STANDARDS

### 1. MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) authorizes the district courts to dismiss any complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. In applying the standards under Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993).

The Court will not, however, accord the presumption of truthfulness to any legal conclusion, opinion or deduction, even if it is couched as a factual allegation. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). The Court will not dismiss a cause of action "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although the pleading standard is liberal, bald assertions and conclusions of law will not enable a complaint to survive a motion pursuant to Rule 12(b)(6). *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996).

### 2. LEAVE TO AMEND

A motion to amend should be freely granted when justice so requires. Fed.R.Civ.P. 15(a). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," leave to amend should be granted. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Leave to amend may be denied if the proposed amendment would not withstand a motion to dismiss. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir.1991).

### C. ANALYSIS

### 1. DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs allege that Defendants violated the Federal Wiretap Act by *intercepting* the first and second discourses on July 6, 2000, (count I); *disclosing* the contents of the first discourse for the purposes of producing, marketing and distributing the Concert DVD (count II); and *using* the contents of the first discourse for the purposes of producing, marketing and distributing the Concert DVD (count III). The Federal Wiretap Act provides, in pertinent part:

Except as otherwise specifically provided in this chapter any person who-

(a) intentionally *intercepts,* endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

. . . . .

(c) intentionally *discloses,* or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; [or]

(d) intentionally *uses,* or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

. . . . .

shall be [subject to criminal punishment or suit by the Government].

18 U.S.C. § 2511(1)(a), (c) & (d) (emphasis added). The Act also includes a private right of action. *See* 18 U.S.C. § 2520.

### a. EXPECTATION OF PRIVACY

"Intercept" is defined under the Act as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). At issue in the present case is Defendants' alleged interception of Plaintiffs "oral communications." An "oral communication" is defined under the Act as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ." 18 U.S.C. § 2510(2).

■ Defendants argue that the conversations intercepted on July 6, 2000, were not private and therefore are not "oral communications" under the Federal Wiretap Act. The relevant inquiry under § 2510(2) is "whether [a plaintiff] expected [his] conversations to be free from interception, and whether, if he had this expectation, it was justified by the circumstances." *Walker v. Darby,* 911 F.2d 1573, 1578 (11th Cir.1990). This inquiry therefore contains both a subjective and an objective component. *See Dorris v. Absher,* 179 F.3d 420, 425 (6th Cir.1999).

Defendants do not challenge Plaintiffs' subjective expectations of privacy, and it appears that Plaintiffs have made such allegations in this case. Plaintiffs allege that: they engaged in a private conversation with Tour Representatives, (F.A.C. ¶ 50; Proposed Second Amended Complaint "P.S.A.C." ¶ 48); Plaintiff Bowens requested that cameras be excluded from the meeting room and that the meeting remain private, (F.A.C. ¶ 51; P.S.A.C. ¶ 49); Detroit Police officials requested that Tour staff not videotape Plaintiffs, (F.A.C. ¶ 54; P.S.A.C. ¶ 52); Defendants Robinson, Tucker, and Silva agreed to a private, unrecorded meeting, (F.A.C. ¶ 55; P.S.A.C. ¶ 53); and Plaintiffs' conversations with Tour Representatives were recorded without Plaintiffs' knowledge, (F.A.C. ¶¶ 52, 56–59; P.S.A.C. ¶¶ 50, 54–57). These allegations support Plaintiffs' claim that they expected their conversations to remain free from interception.

■ Defendants argue, however, that Plaintiffs' subjective expectations were not justified under the circumstances and therefore were not objectively reasonable. Defendants contend that Plaintiffs could not have expected that their conversations would be free from interception because Plaintiffs were acting in their official capacities in a public building when they met with Tour Representatives. Defendants have offered no persuasive authority for

the broad proposition that, as a matter of law, a public official acting in an official capacity in a public building cannot have an expectation that his or her words will be free from interception. In the absence of any authority recognizing such a blanket rule, the Court must assess whether, *under the circumstances of this particular case,* Plaintiffs could have expected that their conversations with Tour Representatives would be free from interception. In this regard, the Sixth Circuit has observed:

> [T]he statute requires that the plaintiff show only no expectation that the oral communication was being intercepted through the use of electronic devices. Thus, *there "may be some circumstances where a person does not have an expectation of privacy, but still would be protected by the statute because he was not aware of the specific nature of another's invasion of his privacy."*

*Boddie v. Am. Broad. Cos.,* 731 F.2d 333, 339 n. 5 (6th Cir.1984) (quoting *Bianco v. Am. Broad. Cos.,* 470 F.Supp. 182, 185 (N.D.Ill.1979)) (emphasis added).

■ In support of their claim, Plaintiffs allege that

> Defendants Robinson, Tucker, and Bill Silva *agreed* to have a private unrecorded meeting . . . with plaintiffs Bowens, Bridges, and Brown. Robinson, Tucker, and Bill Silva observed plaintiff Bowens tell the media that neither they nor their cameras were allowed in the meeting room because it was going to be a private unrecorded meeting. Bowens wanted to allow the parties to have a private discourse to attempt to work out the issues between the City of Detroit and the concert staff.

(F.A.C. ¶ 55; P.S.A.C. ¶ 53.) (emphasis added). Plaintiffs further allege that "(a) the discourses were intended only for a particular person or group (either way, intended only for the persons involved),

and (b) the public was excluded from the area where the discourses occurred." (F.A.C. ¶ 61; P.S.A.C. ¶ 59.) Moreover, although Plaintiffs admit that "others were in the meeting room" when the first discourse occurred, (F.A.C. ¶ 50; P.S.A.C. ¶ 48.), "only Bowens, Bridges, Brown, Robinson, Bill Silva, and Tucker participated in the first discourse," (F.A.C. ¶ 50; P.S.A.C. ¶ 48.) Moreover, "[o]nly certain concert staff and City of Detroit officials were allowed in the meeting room." (F.A.C. ¶ 50; P.S.A.C. ¶ 48.)

Therefore, it appears from Plaintiffs' allegations that Defendants agreed to a private conversation with Plaintiffs, only City Officials and Tour Representatives were present in the meeting room, and the public was excluded. These circumstances constitute facts sufficient to establish that Plaintiffs had an objectively reasonable expectation that their conversations with Tour Representatives would be free from interception. Even though Plaintiffs may have been acting in their official capacities, their expectations that their conversations would be free from interception were not diminished under the circumstances as alleged.

Next, Defendants suggest that footage from the Concert DVD contradicts Plaintiffs' claims that their meeting with Tour Representatives was private. As a preliminary matter, the Court must decide whether the Concert DVD constitutes a "matter outside the pleading" for purposes of Defendants' Motions to Dismiss. Rule 12(b) of the Federal Rules of Civil Procedure provides, in relevant part:

> [i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the Court,* the motion shall be treated as one for summary judg-

ment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b) (emphasis added).

This Court generally does not consider motions for summary judgment prior to the close of discovery. *See Ramik v. Darling Int'l, Inc.,* 161 F.Supp.2d 772, 776 n. 1 (E.D.Mich.2001) (Gadola, J.). Accordingly, if the Concert DVD constitutes a matter outside the pleading, the Court will not convert the present Motions to motions for summary judgment.

■■■ Rule 10(c) of the Federal Rules of Civil Procedure provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Rule 10(c) is permissive, however, and a plaintiff is not obligated to attach to the complaint the "written instrument" upon which the action is premised. *See Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir.1997). If, however, the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit. *Id.* "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Id.* Thus, although a court may not consider matters outside the pleading on a motion to dismiss, " '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.' " *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993)).

■■■ Plaintiffs did not attach the Concert DVD to the First Amended Complaint. Rather, Defendants have filed a copy of the Concert DVD and a videotape of the segment at issue as exhibits in support of their Motions. Defendants as-

sert that the Court should consider the Concert DVD as incorporated into the First Amended Complaint on the grounds that the DVD is central to Plaintiffs' case and is referred to throughout the First Amended Complaint. The Court disagrees with Defendants' conclusions for several reasons.

Plainly, the Concert DVD is not a "written instrument," and the Court is not convinced that it may construe the DVD as such for the purpose of incorporation by reference under Rule 10(c). The Seventh Circuit "has interpreted the term 'written instrument' as used in Rule 10(c) to include documents such as affidavits, and letters, as well as contracts, and loan documentation." *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 453 (7th Cir.1998) (citations omitted); *see also Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir.1998) ("While documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are *central* to his claim, this is a narrow exception aimed at cases interpreting, for example, a contract.") (citation and internal quotation marks omitted) (emphasis in original). Obviously, the Concert DVD does not fit into one of these categories.

Moreover, as the court in *Levenstein* noted, it appears clear that the Concert DVD should not be construed as a "written instrument" for the purposes of Rule 10(c). In this regard, the Concert DVD is not central to Plaintiffs' case in the sense that a purchase and sale agreement is central to an action based upon the contract, *see Pension Benefit Guaranty Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993), or that a pension plan is central to an action to recover assets under the plan, *see Teagardener v. Republic–Franklin Inc. Pension Plan,* 909 F.2d 947, 949–

50 (6th Cir.1990). Although the Concert DVD may be important to Plaintiffs' case insofar as it represents a result of the alleged wiretapping, the Concert DVD is not determinative of Plaintiffs' claims necessarily. Unlike a suit under a contract or pension plan document, the Concert DVD does not define the rights and obligations of the parties. Thus, as opposed to being a "written instrument" for the purposes of Rule 10(c), the Court concludes that the DVD is the sort of "lengthy exhibit[ ] containing extraneous or *evidentiary material* [that] should not be attached to the pleadings." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1327 (2d ed.1990 & supp.2002) (emphasis added).

The purposes for which Defendants offer the Concert DVD demonstrate that the DVD is in fact evidentiary material that the Court may not consider at this stage of the proceedings without converting the present Motions to motions for summary judgment. For instance, Defendants suggest that the Concert DVD reveals the presence of a camera in the room where City Officials met with Tour Representatives. Defendants base this conclusion upon their assertions that the images in the Concert DVD are of a "higher quality" than those that could be produced by hidden cameras, the "obvious" movements of the camera, the lighting in the scenes depicted, the reflection of light on the glasses of a police officer in the room, and the image of a camera operator reflected at several points in a mirror. (*See* Def. June 18, 2002, Br. at 20 n. 7.) As noted already, Plaintiffs have alleged that hidden cameras were used to record the conversations between City Officials and Tour Representatives. (*See, e.g.,* F.A.C. ¶ 52; P.S.A.C. ¶ 50.) Defendants' characterizations of the Concert DVD serve only to create questions of fact that the Court cannot resolve on a motion to dismiss.

Defendants also state that the Concert DVD reveals that other, unnamed third parties were present in the room during the meeting between City Officials and Tour Representatives. Plaintiffs have alleged, however, that "[o]nly certain concert staff and City of Detroit officials were allowed in the meeting room. Although others were present in the meeting room, only Bowens, Bridges, Brown, Robinson, Bill Silva, and Tucker participated in the first discourse." (F.A.C. ¶ 50; P.S.A.C. ¶ 48.) Again, Defendants' characterizations of the Concert DVD create questions of fact as to the identities of the numerous individuals who were apparently in the room at the time of the meeting. In order to resolve these questions, the Court would be required to make factual determinations that are inappropriate at this stage of the proceedings.

Therefore, the Court concludes that Plaintiffs have alleged facts sufficient to state a claim that they expected their conversations to be free from interception under circumstances justifying those expectations. Accordingly, under the allegations in the First Amended Complaint and Proposed Second Amended Complaint, Plaintiffs' conversations with Tour Representatives constitute "oral communications" under the Federal Wiretap Act, 18 U.S.C. § 2510(2).

### b. ONE PARTY CONSENT EXCEPTION

Defendants next argue that, because they consented to the recordings of their conversations with Plaintiffs on July 6, 2000, Defendants are protected from liability under the so-called "one party consent exception" set forth in the Federal Wiretap Act. The exception upon which Defendants rely, 18 U.S.C. § 2511(2)(d), provides:

[i]t shall *not be unlawful* under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or *where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.* 18 U.S.C. § 2511(2)(d) (emphasis added).

In deciding whether this exception is applicable, the initial question is whether a party to the communication conducted the interception or gave prior consent to such interception. Based upon the First Amended Complaint and Proposed Second Amended Complaint, it does not appear that the defendants who engaged in the conversations with Plaintiffs actually conducted the interceptions. Rather, Plaintiffs allege that the interceptions occurred via hidden cameras and microphones, (F.A.C. ¶ 52; P.S.A.C. ¶ 50), operated by two unknown individuals named as "John Doe Number One" and "John Doe Number Two," (F.A.C. ¶¶ 19–20; P.S.A.C. ¶¶ 17–18). Therefore, the relevant question is whether the defendants who participated in the conversations with Plaintiffs consented to the recording of those conversations.

Plaintiffs allege that "[Defendants] Robinson, Tucker, and Bill Silva *knew* that a camera[ ] and microphone[ ] were secretly recording the meeting, and thereby intentionally and/or knowingly deceived plaintiffs by not informing them that they were being recorded." (F.A.C. Compl. ¶ 56; P.S.A.C. Compl. ¶ 54.) Moreover, Plaintiffs allege that "[t]he secret recordings were made as part of the original plan for the concert and the tour; namely, to create 'backstage footage' for the Gangster Rap Concert DVD." (F.A.C. Compl. ¶ 62;

P.S.A.C. Compl. ¶ 60.) Based upon these allegations, the Court concludes that Plaintiffs have admitted that one party, namely Defendants, gave "prior consent" to the interception for the purposes of § 2511(2)(d). Plaintiffs do not dispute this point.

■ Rather, Plaintiffs argue that Defendants are barred under the doctrine of equitable estoppel from asserting the one party consent exception because Defendants "intentionally deceived and led [Plaintiffs] to believe that there would be a private, unrecorded meeting." (Pl. Amend. Third Resp. at 5.) Plaintiffs have cited no persuasive authority for the proposition that the doctrine of equitable estoppel bars Defendants from relying upon the express statutory defense set forth in § 2511(2)(d). The plain language of § 2511(2)(d) provides that an individual is not liable *"where one of the parties to the communication has given prior consent."* This exception is inapplicable *only* when *"such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."* 18 U.S.C. § 2511(2)(d).

Nothing in the statute indicates that a defendant may be precluded from invoking the one party consent exception under the doctrine of equitable estoppel. Rather, under the plain language of the statute, a plaintiff may defeat the one party consent exception in only one way—by demonstrating that the defendant intercepted the communication "for the purpose of committing any criminal or tortious act." This Court will not rewrite the plain language of the statute. Thus, even if Defendants told Plaintiffs that the conversations would not be recorded, Defendants may invoke the one party consent exception unless Plaintiffs can establish that Defendants re-

corded the conversations for a criminal or tortious purpose.

 The Court now addresses that very question, that is, whether Plaintiffs have alleged that their conversations with Tour Representatives were intercepted "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Under this provision, a plaintiff must allege that, at the time the recording occurred, the defendant intended to commit a crime or tort. See Desnick v. Am. Broad. Cos., 44 F.3d 1345, 1353 (7th Cir.1995); see also In re DoubleClick, Inc. Privacy Litigation, 154 F.Supp.2d 497, 515 (S.D.N.Y.2001) (noting that "[s]ection 2511(2)(d)'s legislative history and caselaw make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort"). "[A] plaintiff cannot establish that a defendant acted with a 'criminal or tortious' purpose simply by proving that the defendant committed any tort or crime." DoubleClick, 154 F.Supp.2d at 516. Moreover, " 'the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious.' " Sussman v. Am. Broad. Cos., 186 F.3d 1200, 1202 (9th Cir.1999) (quoting Payne v. Norwest Corp., 911 F.Supp. 1299, 1304 (D.Mont.1995), aff'd in part and rev'd in part, 113 F.3d 1079 (9th Cir.1997)) (emphasis in original).

 In the First Amended Complaint, Plaintiffs allege that their communications with Tour Representatives were intercepted "for the purpose of committing a criminal and/or tortious act; namely ... to eavesdrop upon the private discourses of others without the permission of all persons engaged in the discourse." (F.A.C.Compl.¶ 80.) Plaintiffs appear to allege that the act of intercepting the communication itself constitutes a tortious purpose. This allegation is insufficient, as noted above, because the act of interception itself cannot satisfy the "tortious purpose" aspect of § 2511(2)(d). See Sussman, 186 F.3d at 1202; accord Boddie v. Am. Broad. Cos., 731 F.2d 333, 339 (6th Cir.1984) ("The Wiretap Statute requires the plaintiff to show that the defendants intended an illegal, tortious or injurious act other than the recording of the conversation."); United States v. Phillips, 540 F.2d 319, 327 n. 5 (8th Cir.1976) (rejecting the argument that *any* recording, whether for a legitimate purpose or not, constitutes a violation of the statute); Roberts v. Americable Int'l, Inc., 883 F.Supp. 499, 503 (C.D.Cal.1995) (concluding that "the 'tortious purpose' referenced by the federal permission/exception must be a tortious purpose *other than* the mere intent to surreptitiously record an oral conversation") (emphasis in original).

 Plaintiffs also allege in the First Amended Complaint that "[t]he first and second interceptions were conducted for the purpose of committing a criminal and/or tortious act; namely ... to secretly acquire and/or exploit plaintiffs' likenesses without their consent." (F.A.C.Compl.¶ 80.) (emphasis added). Plaintiffs make a similar allegation in their Proposed Second Amended Complaint, alleging that "[t]he first and second interceptions were conducted for the purpose of committing a criminal and/or tortious act (or acts), including ... invasion of privacy/misappropriation of likeness." (P.S.A.C. ¶ 116.) The Michigan Supreme Court has recognized a tort action for the appropriation of one's name or likeness for the defendant's commercial advantage. See Pallas v. Crowley, Milner & Co., 322 Mich. 411, 416, 33 N.W.2d 911, 913 (1948) (concluding "that there are circumstances under which one may have a right of privacy in a photographic likeness which may

give rise to an action for damages for the unauthorized publication thereof"); *see also Ruffin–Steinback v. dePasse,* 82 F.Supp.2d 723, 728 (E.D.Mich.2000), *aff'd* 267 F.3d 457 (6th Cir.2001) (noting that "[t]he Michigan Supreme Court has recognized a tort-claim for the invasion of a right to privacy that includes misappropriation of a person's name or likeness") (footnote omitted).

Plaintiffs recite the following facts in support of their misappropriation theory:

The secret recordings were made as a part of the original plan for the concert and the tour; namely, to create "backstate footage" for the Gangster Rap Concert DVD ("step 1").

The plan also included secret recording and exploiting the likenesses from persons throughout the tour (the "exploited likenesses") without their consent ("step 2").

The secret recordings and the exploited likenesses were planned to be included and advertised as "exclusive backstage footage" to sell more copies of the Gangster Rap Concert DVD ("step 3").

The final component of the plan included marketing, advertising, promoting, distributing, renting, and selling the Gangster Rap Concert DVD throughout the world ("step 4"). Steps 1, 2, 3, and 4 constituted a conspiracy to create, market, advertise, promote, distribute, rent, and sell the Gangster Rap Concert DVD using stolen likenesses (the "DVD conspiracy").

(F.A.C. Compl. ¶¶ 62–65.; P.S.A.C. ¶¶ 60–63.)

Based upon these allegations, the Court concludes that Plaintiffs have stated a "tortious purpose" under § 2511(2)(d). Specifically, Plaintiffs have stated a claim that, at the time the interceptions occurred, Defendants involved in the interceptions were acting for the purpose of misappropriating Plaintiffs' likenesses.

 In response, Defendants contend that they could not have acted with a tortious purpose because the Concert DVD is a work protected by the First Amendment. Defendants may be correct in their characterization of the Concert DVD, although Plaintiffs dispute this contention. Nevertheless, the Sixth Circuit has held "that it is not necessary for liability [under the Federal Wiretap Act] that the interception be *used* for a criminal or tortious purpose." *Stockler v. Garratt,* 893 F.2d 856, 859 (6th Cir.1990) (emphasis added). Moreover, "[t]he existence of [a] lawful purpose would not sanitize [an interception] that was also made for an illegitimate purpose." *See Sussman,* 186 F.3d at 1202. Therefore, drawing all reasonable inferences in Plaintiffs' favor, the Court cannot conclude at this stage of the proceedings that Defendants acted without a tortious purpose based upon Defendants' assertion that the interceptions were ultimately used for a legitimate purpose. *See Vazquez–Santos v. El Mundo Broad. Corp.,* 219 F.Supp.2d 221, 230 (D.P.R.2002) (concluding that the court could not ascertain the defendants' purpose in recording a telephone conversation on a motion to dismiss).[4]

---

**4.** Defendant Musicland Group, Inc., in its Motion to Set Aside Clerk's Entry of Default, filed on August 30, 2002, raised a First Amendment defense to the *disclosure* of the intercepted conversations premised upon *Bartnicki v. Vopper,* 532 U.S. 514, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001). Defendants also presented this defense at oral argument and in the final paragraph of a supplemental brief that the Court requested at the hearing on the issue of whether the Concert DVD constitutes a matter outside the pleading. *However, the Court will not consider this defense because none of the Defendants, including Musicland, raised it timely in a motion to dismiss.* Defendants may choose to raise this defense if they move for summary judgment.

Accordingly, the Court concludes that the one party consent exception set forth in 18 U.S.C. § 2511(2)(d) is not a basis for dismissal of Plaintiffs' claims under the Federal Wiretap Act. Even though the defendants who were parties to the conversations may have consented to their interception, Plaintiffs have alleged facts sufficient to establish that those conversations were intercepted for a tortious purpose.[5]

## 2. LEAVE TO AMEND

Plaintiffs seek leave to file an amended complaint in order to expand the allegations of Defendants' criminal or tortious purpose and also to add and delete certain parties from the case caption. Defendants argue that the Court should deny Plaintiffs leave to amend because any amendment would be futile. In support of this position, Defendants present essentially the same arguments that they raised in support of their Motions to Dismiss. The Court has evaluated the Proposed Second Amended Complaint in light of Defendants' arguments for dismissal and concludes that the Proposed Second Amended Complaint would survive a motion to dismiss. Accordingly, amendment of the First Amended Complaint would not be futile, and the Court shall grant Plaintiffs' Motion.

The only other defense raised as to the *disclosure* (count II) and *use* (count III) of the intercepted conversations is that, since the conversations were not *intercepted* in violation of 18 U.S.C. § 2511(1)(a), there can be no liability for the subsequent disclosure and use of those interceptions. (*See* Def. June 18, 2002, Br. at 21.) As noted in this opinion, however, the Court has found no basis on which to dismiss Plaintiffs' claim that Defendants *intercepted* their communications in violation of § 2511(1)(a). Therefore, Defendants have presented no basis at this point for the dismissal of counts II and III.

## IV. DEFENDANT MUSICLAND GROUP INC.'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT

■ Defendant Musicland Group, Inc. ("Musicland") filed a Motion to Set Aside Clerk's Entry of Default on August 30, 2002. Plaintiffs filed an untimely response to the Motion on November 13, 2002. Plaintiffs did not seek an extension of time to file their response, nor have they attempted to demonstrate "excusable neglect," *see* Federal Rule of Civil Procedure 6(b)(2). Accordingly, the Court will not consider Plaintiffs' untimely response and shall strike it from the record of this case. For the reasons set forth below, the Court shall grant Musicland's Motion.

■ The Court may set aside an entry of default upon a showing of "good cause." Fed.R.Civ.P. 55(c). In determining whether good cause exists,

> courts are required to weigh three factors. First, the court must determine whether the plaintiff will be prejudiced from reopening the case. Then the inquiry turns to whether the defendant has a meritorious defense. Finally, the court must examine whether culpable conduct of the defendant led to the default.

*Berthelsen v. Kane,* 907 F.2d 617, 620 (6th Cir.1990).

5. Plaintiffs allege several other "tortious purposes" in the Proposed Second Amended Complaint, including violations of the right of publicity, invasion of privacy/false light, unjust enrichment, and fraud. The Court need not address these additional allegations, however, because the allegation that Defendants acted for the purpose of misappropriating Plaintiffs' likenesses is sufficient to establish a "tortious purpose" under § 2511(2)(d). So long as Plaintiffs have alleged at least one "tortious purpose," the prior consent exception is not available to Defendants as grounds for dismissal.

The three factors outlined in *Berthelsen* favor setting aside the Clerk's entry of default. First, Plaintiffs will not be prejudiced. In order to demonstrate prejudice, Plaintiffs "must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud or collusion." *Id.* at 621. Musicland filed its Motion to Dismiss on the same day that default was entered, and it moved to set aside the default almost immediately thereafter. Plaintiffs have no valid claim of prejudice. Second, even though the Court will deny Defendants' Motions to Dismiss, including Musicland's Motion, the Court finds that Musicland has presented a meritorious defense at this preliminary stage of the case, which tests only the legal sufficiency of the pleading. In this regard, the Court noted that it was unable to consider several additional defenses raised by Defendants at this stage of the proceedings. Third, the Court finds little evidence of culpable conduct. Musicland is a subsidiary of Best Buy Co., Inc., which is also a named Defendant in this action, and both companies are represented by the same law firm. Musicland states that, because of its relationship with Best Buy, "there was some miscommunication between Best Buy and counsel ... concerning the status of service on Musicland." (Dr. at 2.) "To be 'culpable,' the conduct leading to the entry of default must have been willful, intentional, reckless or in bad faith. More than mere negligence is required." *Momah v. Albert Einsten Med. Ctr.*, 161 F.R.D. 304, 308 (E.D.Pa.1995). Here, there is no evidence that Musicland or counsel acted willfully, intentionally, recklessly or in bad faith. Therefore, for the reasons set forth above, the Court shall grant Musicland's Motion to Set Aside Clerk's Entry of Default.

## V. DEFENDANTS' MOTION FOR SANCTIONS

Defendants move for sanctions under Rule 11 of the Federal Rules of Civil Procedure and under 28 U.S.C. § 1927. Rule 11 provides, in relevant part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b). When determining whether sanctions under Rule 11 are appropriate, the Court must evaluate "whether the individual attorney's conduct was reasonable under the circumstances." *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir.1990).

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the

United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

In determining whether sanctions under § 1927 are appropriate, the Sixth Circuit has explained:

> We construe "vexatiously multiplying proceedings" to include conduct where "an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir.1986). We have also held that § 1927 sanctions are appropriate where "an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996) (quoting *In Re Ruben*, 825 F.2d 977, 984 (6th Cir.1987)). Simple inadvertence and negligence are not grounds for imposing § 1927 sanctions. *See Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir.1997).

*Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir.2002).

Defendants filed their Motion for Sanctions prior to the Court's dismissal of Plaintiffs' state law claims and Plaintiffs' voluntary dismissal of two federal claims. Thus, the only claims that the Court actually evaluated are Plaintiffs' claims under the Federal Wiretap Act. Defendants' Motion for Sanctions is premised upon their contention that Plaintiffs' claims are not well-founded. As discussed in this opinion, however, the Court has concluded otherwise. Accordingly, sanctions are inappropriate and Defendants' Motion shall be denied.

## VI. CONCLUSION

For the reasons set forth this opinion,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss [docket entries 34, 38, 44, 65, 68, 73, 84, and 98] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Motion for Leave to Amend the First Amended Complaint [docket entry 103] is **GRANTED**. Plaintiffs shall file their Second Amended Complaint within fourteen (14) days of the filing of this order, and the case caption shall be amended in accordance with Plaintiffs' Second Amended Complaint.

**IT IS FURTHER ORDERED** that Defendant Musicland Group, Inc.'s Motion to Set Aside Clerk's Entry of Default [docket entry 107] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Response to Defendant Musicland Group, Inc.'s Motion to Set Aside Clerk's Entry of Default [docket entry 148] **SHALL BE STRICKEN** and deemed not a part of the record of this case.

**IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions [docket entry 36] is **DENIED**.

**SO ORDERED.**