*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0069P (6th Cir.)
File Name: 04a0069p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

    *v.*    No. 02-2081

EDWARD DOMINGUEZ,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 01-90030—Marianne O. Battani, District Judge.

Argued: October 21, 2003

Decided and Filed: March 4, 2004

Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge;
and GWIN, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** David J. Debold, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant.

———————————

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

Richard D. Korn, Detroit, Michigan, for Appellee. **ON BRIEF:** David J. Debold, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Richard D. Korn, Detroit, Michigan, for Appellee.

———————————

## OPINION

———————————

BOGGS, Chief Judge. The United States appeals from an interlocutory order in its prosecution against Edward Dominguez. The district court suppressed key evidence on the basis of issue preclusion because the same evidence had been suppressed in a previous Michigan state court proceeding against Dominguez. Because the district court misinterpreted applicable Michigan law, we REVERSE this order and remand for further proceedings consistent with our holdings.

I

This case presents the interesting issue of what preclusive force a Michigan state criminal proceeding may have upon the course of a subsequent federal criminal proceeding. The United States charges Dominguez with drug trafficking, under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii). Its case depends largely upon evidence seized in Dominguez's automobile pursuant to a Michigan state search warrant. That warrant, in turn, was issued based upon an affidavit setting forth the report of a confidential informant that he had seen a kilogram of cocaine stored in a secret compartment of an automobile registered to Ruben Rodriguez, an alias for Dominguez.

A joint state-federal task force, the Western Wayne Interdiction Team, executed the search warrant and found cocaine in the car (although not in a secret compartment). The State of Michigan then brought state-law drug-trafficking charges against Dominguez. The state trial court suppressed

all evidence obtained as a result of the search warrant, holding that the warrant had been obtained in violation of the Fourth Amendment to the United States Constitution. The court then dismissed the state charges against Dominguez without prejudice. Michigan did not appeal from that evidentiary ruling.

After the state case was dismissed, the United States brought this action based on federal-law charges similar to those brought by Michigan in the prior state court action. Dominguez again moved to suppress the evidence. The district court granted his motion because it found that the United States was collaterally estopped from litigating that issue as a privy to the state of Michigan. The United States appeals.

## II

We review *de novo* a district court decision based on claim or issue preclusion. *Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 851 (6th Cir. 1997). Our analysis begins with the Full Faith and Credit Act, 28 U.S.C. § 1738, which reads in relevant part: "[t]he records and judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of [the state] from which they are taken." Therefore, we must normally give a Michigan state court judgment "the same preclusive effect as would be given that judgment under the law of the State." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). This rule applies to issues adjudicated in a state-court criminal proceeding. *Allen v. McCurry*, 449 U.S. 90 (1980) (plaintiff cannot relitigate in federal civil rights action the issue of constitutionality of search, adjudicated in his prior state criminal conviction).

Of course, a Michigan state court never could sit in judgment over the prosecution of a federal crime, as 18 U.S.C. §3231 creates exclusive federal criminal jurisdiction,

so there is no Michigan case law directly on point. This by itself does not prevent us from applying the Full Faith and Credit Act. The Supreme Court resolved a similar issue in *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373 (1985), which directed the appellate court to look first to the state law of preclusion in order to determine whether a prior state court judgment precluded an antitrust claim within the exclusive jurisdiction of the federal courts. Only after making that determination would the federal court consider whether the Full Faith and Credit Act should apply. *Marrese*, 470 U.S. at 381-82. Because a state court could never literally apply its preclusion rules to that particular claim, the federal court applies the state's general preclusion rules. *Ibid. Marrese* involved claim preclusion, but it relied principally upon *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 479 & n.20 (1982), which used the state law of issue preclusion. *Ibid.* This Circuit therefore understands *Marrese* to require a federal court to look first to the rendering state's law of issue preclusion, even when the issue in question arises in the context of a claim that is exclusively within federal jurisdiction. *Kaufman v. BDO Seidman*, 984 F.2d 182, 183-84 & n.5 (6th Cir. 1993).

Therefore, even though the Michigan courts could never literally confront our situation, we can and must resolve the Michigan law questions before asking whether some exception to the Full Faith and Credit Act may apply.

## III

Under Michigan law, the party asserting preclusion bears the burden of proof. *Detroit v. Qualls*, 454 N.W.2d 374, 383 (Mich. 1990). A court must apply issue preclusion when 1) the parties in both proceedings are the same or in privity, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated in the first proceeding, 4) that issue was necessary to the judgment, and 5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue. *Michigan v. Gates*,

452 N.W.2d 627, 630-31 (Mich. 1990). The only one of these factors in contention here is the first. The district court found that Michigan law would treat the federal government as "essentially the same party" as the State for these purposes. We disagree.

The district court, and Dominguez, rely entirely upon *In re Forfeiture of $1,159,420*, 486 N.W.2d 326 (Mich. Ct. App. 1992). There, the state of Michigan sought to seize property from Robert Hawkins and his wife and minor children. In a prior federal criminal case against Hawkins for drug trafficking, a federal district court had upheld the validity of a search warrant used to get evidence against him. In the state forfeiture proceeding, the state relied on that same evidence. Although the parties were not identical on either side, the Michigan appellate court held that the defendants were collaterally estopped from contesting the validity of the search warrant. *In re Forfeiture*, 486 N.W.2d at 333. The privity requirement of Michigan's preclusion test was satisfied because "the federal prosecution and the prosecution in this case are essentially the same party, albeit of different governments." *Ibid.* The district court concludes that Michigan law equates Michigan and federal prosecutors for estoppel purposes. But this conclusion does not follow from *In re Forfeiture* for several reasons.

To begin with, *In re Forfeiture* is an appellate-level decision, so it can give us only limited guidance in emulating the Michigan Supreme Court. *See King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 160-61 (1948) (federal court construes state law by emulating the highest court of the state). The key holding of *In re Forfeiture* relies upon the Michigan Supreme Court opinion in *Michigan v. Gates*, *supra*, but *Gates* merely found that a Michigan prosecutor acted as the same party when he represented the entire state, as when he represented a state agency. *Gates*, 452 N.W.2d at 630. *Gates* does not imply that separate governmental units, much less separate sovereigns, are privies as a matter of law.

Privity between separate sovereigns is usually found only after much factual analysis. *See United States v. ITT Rayonier*, 627 F.2d 996, 1003 (9th Cir. 1980) (state and federal environmental agencies were in privity where they collaborated to grant and later revoke a license under joint-authority statutory scheme); *compare United States v. Power Eng'g Co.*, 303 F.3d 1232, 1241 (10th Cir. 2002) (distinguishing facts and finding no privity). Michigan law does not find privity between governmental units as a matter of law. Quite the contrary, *Gates* emphasizes that such questions require "multifaceted analysis and balancing of competing and vaguely defined governmental and private interests." *Id.* at 630 n.12 (quoting Holland, *Modernizing Res Judicata Reflections on the Parklane Doctrine*, 55 Ind. L.J. 615 , 618-19 (1980)). Michigan thus agrees with the modern view of collateral estoppel, that privity will be found only upon consideration of the facts of a particular case. *E.g.*, *United States v. Bonilla-Romero*, 836 F.2d 39, 43 (1st Cir. 1987). *In re Forfeiture* itself is not to the contrary, although the district court apparently did not appreciate the significance of the words "*in this case* [the prosecutors] are essentially the same party." *In re Forfeiture*, 486 N.W.2d at 333 (emphasis added).

Nor are the facts of *In re Forfeiture* so like those before us as to demand the same outcome. Unlike the second prosecutor in that case, the United States is not an arguable stranger to the dispute now seeking to assert issue preclusion; rather, we are asked to apply issue preclusion *against* the newcomer based upon a finding of privity. The latter is a weightier determination. Many jurisdictions have dispensed with the privity requirement altogether as to the party asserting preclusion, *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 326 & n.14 (1971), but never as to the party to be precluded. *Shimman v. Frank*, 625 F.2d 80, 89-90 (6th Cir. 1980).

Michigan maintains the traditional rule of "mutuality of estoppel," requiring both the party to be precluded and the

party asserting preclusion to have been represented at the prior proceeding. *Lichon v. American Universal Ins. Co.*, 459 N.W.2d 288, 298 (Mich. 1990). One might conclude that when a Michigan court finds privity, it uses exactly the same analysis as to either role, so the finding is precedential across the board. But it has long been observed that in jurisdictions that require mutuality of estoppel, "exceptions were made by decisions that extended the benefits of preclusion through findings of privity that surely would not have been made had the direction of preclusion been reversed." 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4463 (1981). The Michigan Court of Appeals takes a pragmatic, equitable approach to the mutuality requirement. *See Keywell & Rosenfeld v. Bizell*, 657 N.W.2d 759, 787-88 (Mich. Ct. App. 1992), and cases cited therein. Therefore, even the same panel of the Michigan Court of Appeals might not have found privity had the *In re Forfeiture* roles been reversed.[1]

The Michigan Supreme Court has recently provided more relevant guidance. *Baraga County v. State Tax Comm'n*, 645 N.W.2d 13, 17 (Mich. 2002), held that Michigan's Tax Commission was not bound by a consent agreement between a county and an Indian tribe over the payment of property taxes, because the facts presented did not show that the county and the Tax Commission were in privity. The court held that between governmental units, unlike private entities, privity is not based upon an identity of interests, but only upon an agency relationship. *Baraga County*, 645 N.W.2d at 17. The court also expressed its reluctance to find privity between different governmental units, agreeing with the general proposition that "[c]ourts have also generally found

that no privity exists *between state and federal governments*, between the governments of different states, or between state and local governments." *Ibid.* (quoting 47 Am. Jur. 2d *Judgments*, § 700 (2003)) (emphasis added). Although *Baraga County* addresses federal-state privity only in dictum, it strongly suggests that absent a showing of an agency relationship between the state and federal prosecutors, a Michigan court would not find they were in privity.

The *Baraga County* dictum commands our respect, the more so because it accords with the general understanding of the relationship between federal and state prosecutors. This court has opined, albeit only in dictum and without analysis of state law, that a Michigan and a United States prosecutor were not the same party. *United States v. Lloyd*, 10 F.3d 1197 (6th Cir. 1993). The First Circuit Court of Appeals routinely looks for an agency relationship to determine whether a federal prosecution is collaterally estopped by a ruling in a prior state prosecution. *United States v. Charles*, 213 F.3d 10, 21 (1st Cir.), *cert. denied*, 531 U.S. 915 (2000).[2] Similarly, this court has recognized that successive state and federal prosecutions may constitute double jeopardy only if the state proceeding was a mere "tool" or "cover" for a federal prosecution. *United States v. Louisville Edible Oil Prods., Inc.*, 926 F.2d 584 (587-88) (1991) (*quoting Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959)).

In his appellate brief, and at oral argument, Dominguez asserted that the United States did direct the state prosecution. But there is no evidence in the record to support this argument. Dominguez merely asserts that a state-employed Assistant Attorney General on the state prosecution team was also designated as an Assistant United States Attorney

---

[1]The *In re Forfeiture* court also found privity on the other side of the equation, reasoning that Hawkins's interests as criminal defendant represented his and his family's interests as property owners. 486 N.W.2d at 333. Dominguez therefore suggested at colloquy that Michigan and the United States were like a family, a warm view of federal-state relations that this court cannot hold always is accurate.

[2]The United States urges us to adopt *Charles* as a rule of federal common law. But it is not clear whether *Charles* and related cases establish a rule of federal law or simply recognize a commonality in state law throughout the First Circuit.

involved in the federal prosecution. This court will not affirm based upon a mere assertion made for the first time at the appellate level. This is particularly so, because even if supported, the facts asserted would not prove control or agency: Dominguez does not assert that this particular state prosecutor could or did effectively recommend dismissal, nor that he was subject to federal control during the state proceedings.

We conclude that a Michigan court applying Michigan law would not find based upon the facts in the record that the United States was in privity with the Michigan prosecutor in the prior state proceeding. Therefore, collateral estoppel does not bar the introduction of this evidence.

Even if Michigan law did create privity between the federal and state governments as a matter of law, we would have grave doubts as to the propriety of estopping a federal prosecutor on these grounds. As seen in this case, issue preclusion often concludes an action as surely as claim preclusion. *See Ashe v. Swenson*, 397 U.S. 436, 445 (1970) (state is precluded from separately prosecuting alleged robber for each victim of same robbery, where state could not prove identity in first trial). In effect, Michigan could gravely affect the powers of the United States acting as sovereign in its own courts. *Cf. Turley v. Wyrick*, 554 F.2d 840, 842 (8th Cir. 1977) ("collateral estoppel doctrine does not apply when different sovereigns and, thus, different parties are involved in the litigation.") The Full Faith and Credit Act certainly gives the Michigan courts and legislature considerable influence over subsequent litigation in federal court, and this serves comity. *Migra*, 475 U.S. at 84. But to promote comity is one thing, to surrender sovereignty quite another.

The problem is illustrated by comparison to Mich. Comp. Laws Ann. § 333.7409, which bars a Michigan prosecution for drug trafficking based upon acts that have already given rise to a criminal prosecution in another jurisdiction. Dominguez urges that a Michigan court would analogize from

this statute and bar a successive federal prosecution as well. But this would let a hypothetical Michigan court do what the state legislature may not. Michigan clearly could not by statute restrain federal prosecutors from enforcing federal criminal laws as to Michigan convicts. How, then, can its courts create a uniquely-targeted rule of preclusion to do precisely that?

The United States in its role as prosecutor is very different from the usual civil litigator. In *Standefer v. United States*, 447 U.S. 10 (1980), the Court determined that non-mutual collateral estoppel may not be applied against the United States in criminal cases. The Court based this decision in part upon the great public interest in the maintenance of criminal prosecutions despite possibly erroneous prior acquittals based on the same facts. *Standefer*, 447 U.S. at 25. The public's interest stands in sharp contrast to the importance of the vindication of a mere private right in the usual civil action. *Id.* at 24. Just so, applying a general state preclusionary rule, even as to a claim exclusively within the civil jurisdiction of the United States impairs only the rights of one litigant on one occasion; but only the United States has the power to enforce its own criminal laws. It should not be lightly inferred that Congress intended to put this fundamental attribute of sovereignty at the mercy of a state legislature's or judiciary's ability to say, as it were, "inside our state borders, the federal government is us."

Such an expansive reading of the Act could have mischievous results. The federal government would doubtless be obliged to involve itself closely in all Michigan criminal prosecutions implicating some federal crime. The resulting interference with the Michigan Attorney General's office would waste federal and state resources. It might also impair the very goal of the Full Faith and Credit Act, comity. *See Migra*, 475 U.S. at 84. And the mischief need not be confined to the criminal arena but could spread to other areas of overlapping federal and state responsibility. Instead of assessing the sovereigns' relationship on a case-by-case basis,

as in *ITT Rayonier*, *supra*, the mere fact of overlap would be enough to create privity between agencies. Confronting a similar issue, the Supreme Court held that a California state court ejectment action against tenants of the United States did not estop the United States, even though California made landlords privy to their tenants in such actions. *Carr v. United States*, 98 U.S. 433, 437 (1878). To rule otherwise would be to find, unacceptably, that California had subjected the United States to suit without its consent or even its knowledge. *Id.* at 438. *Carr* may not fully accord with the modern view of sovereign immunity, but its general concerns remain valid. Generally applicable state rules of privity may occasionally encompass the United States in its sovereign role and preclude some claim or issue. *ITT Rayonier*, 627 F.2d at 1002-03 & n.7. But it seems unlikely that a privity rule targeted solely at the United States as prosecutor would come within the bounds of the Full Faith and Credit Act.

Because the United States was not party or privy to the state court proceeding against Dominguez, it is not collaterally estopped from litigating the admissibility of the evidence against Dominguez, and we therefore REVERSE the order of the district court and remand for further proceedings in accord with this opinion.