Gregory J. BOWENS, et al., Plaintiffs,

v.

AFTERMATH ENTERTAINMENT,
et al., Defendants.

No. CIV. 02–40170.

United States District Court,
E.D. Michigan,
Southern Division.

March 31, 2005.

David K. Tillman, Tillman & Tillman, Glenn D. Oliver, Detroit, for Gregory J. Bowens, Paula M. Bridges, Gary A. Brown, Robert B. Dunlap, Phillip A. Talbert, Plaintiffs.

Brian D. Wassom, Honigman, Miller, (Detroit), Cynthia G. Thomas, Honigman, Miller, (Detroit), Herschel P. Fink, Honigman, Miller, (Detroit), Khalilah V. Spencer, Dickinson Wright, Thomas G. McNeill, Dickinson Wright, Detroit, Eric A. Michaels, Hertz, Schram, (Bloomfield Hills), Howard Hertz, Hertz, Schram, (Bloomfield Hills), Bloomfield Hills, Steven M. Hayes, Manatt, Phelps, (New York), New York, NY, Douglas G. McCray, Fabian, Sklar, Farmington Hills, Jayne L. Jakubaitis, Bricker & Eckler, Cleveland, OH, Stephen M. Kelley, Kelley, Casey, St. Clair Shores, Raymond L. Morrow, Kemp, Klein, C. Edward Hildebrandt, Vandeveer Garzia (Troy), John J. Lynch, III, Vandeveer Garzia (Troy), Troy, Laurie J. Michelson, Butzel Long (Detroit), Detroit, Cynthia G. Thomas, Honigman, Miller, (Bingham Farms), Bingham Farms, M.J. Stephen Fox, Fox Assoc., Grand Rapids, Cynthia G. Thomas, Honigman, Miller, (Detroit), John E. McSorley, Garan Lucow (Detroit), Detroit, for Aftermath Entertainment, Amazon.com, Incorporated, AOL Time Warner, Incorporated, Philip J. Atwell, Barnes and Noble, Incorporated, Barnes and Noble.com, Incorporated, Bertelsmann AG, Best Buy Company, Incorporated, Blockbuster, Incorporated, Borders Group, Incorporated, Cdnow, Incorporated, Chronic 2001 Touring, Incorporated, Circuit City Stores, Incorporated, John Doe, One and Two, Eagle Rock Entertainment, PLC, Eagle Vision, Incorporated, Geronimo

Film Productions, Incorporated, Harmony House Records and Tapes, Incorporated, Hastings Entertainment, Incorporated, HMV Media Group PLC, Honigman Miller Schwartz and Cohn, L.L. P., House of Blues Concerts/Hewitt/Silva, L.L. C., Ingram Entertainment Holdings, Incorporated, Interscope Records, Incorporated, Ervin Johnson, Magic Johnson Productions, L.L. C., Metropolitan Entertainment Group, Incorporated, Movie Gallery, Incorporated, MTS, Incorporated/Tower Records, Musicland Group, Incorporated, Panavision, Incorporated, Radio Events Group, Incorporated, Red Distribution, Incorporated, Phil Robinson, William Silva, Trans World Entertainment Corporation, Kirdis Tucker, Wherehouse Entertainment, Incorporated, WH Smith PLC, Andre Young, M.G. A., Incorporated, moviegallery.com, Incorporated, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the Court are cross motions for summary judgment brought by the parties. A hearing on the motions was held on March 21, 2005. For the reasons stated below, the Court will grant Defendants' motion and deny Plaintiffs' motion. The Court will also deny all parties' motions for sanctions.

## I. BACKGROUND

The Court previously recounted the alleged factual background of this matter in a memorandum opinion and order denying Defendants' motion to dismiss, as follows:

On July 6, 2000, rap music artists Andre Young, Snoop Dogg, Ice Cube, and Eminem were scheduled to perform as part of the "Up in Smoke Tour" (the "Tour") at Joe Louis Arena in Detroit. (See Def. June 18, 2002 Br. at 2.) Prior to arriving in Detroit, the Tour had performed in ten cities in the United States and Canada. (See id.) At each performance, the Tour played a short video (the "Video") to introduce the headline performers, Andre Young and Snoop Dogg. (See id.) At approximately 5:00 p.m. on July 6, 2002, and only hours before the concert was to begin, officials from the City of Detroit including members of the Detroit Police Department ("City Officials") arrived at Joe Louis Arena and met with individuals associated with the Tour ("Tour Representatives"). (See id.) Citing various obscenity statutes, the City Officials demanded that the Video not be played during the performance. (See id. at 2–3.)

Plaintiffs allege that the meeting consisted of a private discourse (the "first discourse") between Plaintiffs Greg Bowens, press secretary to Detroit Mayor Dennis Archer, Gary Brown, a Commander in the Detroit Police Department, Paula Bridges, a Second Deputy Chief in the Detroit Police Department, and Defendants Phil Robinson, the on-site promoter representing Ervin Johnson and Magic Johnson Productions, Kirdis Tucker, the General Manager of Aftermath Entertainment, and Bill Silva, the President of House of Blues Concerts. (First Amended Complaint ("F.A.C.") ¶ 50.) Moreover, "[o]nly certain concert staff and City of Detroit officials were allowed in the meeting room." (F.A.C. ¶ 50.) Despite Bowens' explicit request for a private meeting, however, Tour Representatives, using hidden cameras and microphones, recorded the first discourse. (F.A.C. ¶ 52.) In addition, Tour Representatives used a secret camera and microphone to record a private discourse between Plaintiff Robert Dunlap, an officer in the Detroit Police Department, and Bob Fontenot, the tour's head of security (the "second discourse"). (F.A.C. ¶ 57.)

The audio and video recordings of the July 6, 2000, conversations between Plaintiffs and Tour Representatives were incorporated into a "Gangster Rap Concert DVD" (the "Concert DVD"), and advertised as "exclusive backstage footage." (F.A.C.¶¶ 58, 62.) The backstage footage involving Plaintiffs was included in two "bonus" tracks on the Concert DVD entitled "The Detroit Controversy" and "Crew." (F.A.C.¶ 67.) The Concert DVD is marketed, advertised, promoted, distributed, rented, and sold throughout the world. (F.A.C.¶ 65.) Further, the Concert DVD "has become one of the hottest-selling music videos, achieving worldwide multi-platinum status." (F.A.C.¶ 69.)

Plaintiffs filed the First Amended Complaint in this Court on April 24, 2002, naming, in addition to Tour Representatives Robinson, Tucker, and Silva, an array of media and entertainment companies, retailers, a Detroit law firm, and various other individuals as Defendants. The case was originally assigned to United States District Judge Avern Cohn but was transferred to the undersigned on June 20, 2002, pursuant to Local Rule 83.11(d).

In the First Amended Complaint, Plaintiffs alleged nineteen causes of action, only three of which remain before the Court at this time. In counts one, two, three, and four, Plaintiffs alleged violations of Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510, *et seq.* (the "Federal Wiretap Act" or "Act"). In counts five, six, seven, eight and nine, Plaintiffs alleged violations of the Michigan Eavesdropping Statutes, Michigan Compiled Laws § 750.539a *et seq.* In counts ten, eleven, twelve, thirteen, and fourteen, Plaintiffs alleged false light-invasion of privacy, misappropriation of Plaintiffs' likenesses, violation of the right of publicity, unjust enrichment, and restitution.

In count fifteen, Plaintiffs alleged a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Finally, in counts sixteen, seventeen, eighteen, and nineteen Plaintiffs alleged fraud based on false representation, fraud based on failure to disclose facts, civil conspiracy, and aiding and abetting.

On July 15, 2002, this Court dismissed without prejudice Plaintiffs' state law claims, declining to exercise supplemental jurisdiction over those claims. On August 23, 2002, United States Magistrate Judge Wallace Capel, Jr. granted in part Plaintiffs' Motion for Leave to Amend the First Amended Complaint, allowing Plaintiffs to withdraw their Federal Wiretap Act claim in count four and their Lanham Act claim in count fifteen. Therefore, only counts one, two, and three, each of which arises under the Federal Wiretap Act, remain before the Court.

*Bowens v. Aftermath Entertainment,* 254 F.Supp.2d 629, 634–36 (E.D.Mich.2003).

Defendants filed this motion for summary judgment on August 30, 2004. Plaintiffs, in drafting their response brief, believed that Plaintiffs also deserved summary judgment on the issue of liability and requested leave to file such a motion. This Court granted leave so that the Court could address all legal issues together. All parties also filed motions for sanctions, which will be addressed below. The briefing on these motions was completed on December 6, 2004.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

### III. ANALYSIS

As a threshold matter, the Court must address the effect a state court judgment has on the claims before this Court. On July 15, 2002, this Court dismissed without prejudice Plaintiffs' state law claims, declining to exercise supplemental jurisdiction over those claims. Plaintiffs subse-

quently brought those claims in state court. On August 21, 2003, the Honorable John A. Murphy in the Circuit Court for the County of Wayne granted summary judgment to Defendants on all the claims in state court.

Defendants argue that the doctrines of *res judicata* and collateral estoppel warrant summary judgment in this case. The Sixth Circuit has noted "the perennial confusion over the vocabulary and concepts of the law of preclusion." *Heyliger v. State Univ. & Cmty. Coll. Sys. Of Tenn.*, 126 F.3d 849, 852 (6th Cir.1997). The Supreme Court has instructed that:

the preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (citations omitted) (quoted in *Heyliger*, 126 F.3d at 852). In this case, the federal and state claims proceeded simultaneously in the federal and state systems. There is no claim that the claims "should have been advanced in an earlier suit." *Id.* Rather, the question is whether the parties should be precluded from "relitigating" certain issues that were decided first in the state court. *Id.* Consequently, the doctrine of issue preclusion, not claim preclusion, applies to this case.

■ The Sixth Circuit has held that [w]hen considering whether the judgment of a state court will have either type of preclusive effect on a subsequent action brought in federal court, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment. *Heyliger*, 126 F.3d at 851–52. The Sixth Circuit has also recently held that "[u]nder Michigan law, the party asserting preclusion bears the burden of proof." *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir.2004) (citing *Detroit v. Qualls*, 434 Mich. 340, 454 N.W.2d 374, 383 (Mich. 1990)). Michigan law requires a court to apply issue preclusion if:

1) the parties in both proceedings are the same or in privity, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated in the first proceeding, 4) that issue was necessary to the judgment, and 5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue.

*Id.* (citing *Michigan v. Gates*, 452 N.W.2d 627, 630–31, 434 Mich. 146 (Mich.1990)).

■ In this case, the first requirement is satisfied because all of the parties before this Court were also parties to the state court litigation. The second requirement is also satisfied because there was a valid and final judgment issued by the state court through Judge Murphy's opinion and judgment. Even though that ruling is being appealed, this Court has previously held that "Michigan and federal courts agree that an appeal of a judgment does not alter the preclusive effect of the same."

*Chakan v. City of Detroit,* 998 F.Supp. 779, 783 (E.D.Mich.1998) (Gadola, J.) (citation omitted).

The third requirement is that "the same issue was actually litigated in the first proceeding." *Dominguez,* 359 F.3d at 842. As the Supreme Court has noted, "even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." *S. Pac. R.R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). In this case, the question of whether Plaintiffs had a reasonable expectation of privacy in the conversation has been presented to both the federal and state courts. The state court judge explicitly addressed whether Plaintiffs had "reasonable expectation of privacy" in considering Plaintiffs' claims under the Michigan Eavesdropping Statute. *Bowens v. Aftermath Entertainment,* No. 02–233251, slip op. at 4 (Wayne County Cir. Ct. Aug. 23, 2003). In reviewing the federal claims under the Federal Wiretap Act, this Court must also determine whether the Plaintiffs had "an expectation of privacy that is both subjectively and objectively reasonable." *Dorris v. Absher,* 179 F.3d 420, 425 (6th Cir.1999); *see also Bowens,* 254 F.Supp.2d at 637.

Having reviewed the video segment in question, the state court judge concluded:

[i]t is difficult to find reasonable expectations of privacy where the parties knew that they were being videotaped. Plaintiffs did ask to talk privately, yet, upon getting no response from the Defendants present, Plaintiffs proceeded anyway. Thus, Plaintiffs were apparently aware that the conversation was not private, yet elected to proceed regardless.

The door was open, and people were coming and going. [citations omitted.]

Plaintiffs may be right that the events at issue did not transpire before the arena audience itself, but the events were public enough that no reasonable expectation of privacy existed.

Slip Op. at 4–5. This Court has found no basis for distinguishing the interpretation of a reasonable expectation of privacy under the state and federal statutes. Consequently, this Court concludes that the issue of whether the Plaintiffs had an objectively reasonable expectation of privacy was actually litigated in the first proceeding. The third requirement for the application of issue preclusion has therefore been satisfied.

The fourth requirement is that the actually litigated issue "was necessary to the judgment." *Dominguez,* 359 F.3d at 842. The reasonable expectation of privacy was essential to addressing the Michigan Eavesdropping statute. The state court judge granted summary judgment on those claims based on the lack of the reasonable expectation of privacy. Slip Op. at 4–6. Consequently, the issue was necessary to the prior judgment. This element has therefore been satisfied.

Finally, the Court must determine whether "the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue." *Dominguez,* 359 F.3d at 842. Plaintiffs had every incentive to vigorously contest the issue of a reasonable expectation of privacy before the state court. Plaintiffs, however, argue that the issue was not fully and fairly litigated. Resp. at 19.

Specifically, Plaintiffs argue in a conclusory fashion that "[t]he trial Court decision was premature (it was granted before the close of discovery) and incorrectly decided. Plaintiffs are appealing that decision. . . . *res judicata* and collateral estoppel do not apply because there is new evidence supporting plaintiffs' claims." *Id.* at 18–19.

As noted above, the fact that the decision is being appealed does not affect the preclusive effect of the state court judgment. *Chakan*, 998 F.Supp. at 783. Although Plaintiffs offer five allegedly new pieces of evidence, Plaintiffs do not describe the extent of the discovery that allegedly remained to be accomplished before the state court. Nor do Plaintiffs allege that it was impossible to accomplish such discovery in the state court. The state court opinion does not refer to any requests by Plaintiffs for additional discovery, nor have Plaintiffs provided this court with a record of the state scheduling order. The state court opinion was issued on August 21, 2003 in a case that was filed in 2002; on its face, the opinion does not appear to be premature.

The Court has not found a basis for overcoming the preclusive effect of a prior judgment on the basis of newly discovered evidence. *See* Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction 2d § 4416 at 397 (citing, *e.g.*, *Cory v. Comm'r*, 159 F.2d 391, 392 (3d Cir.1947)) ("[i]t is very clear in the application of res judicata that the parties are not entitled to have a question considered on its merits a second time merely because they failed to produce all the facts the first time."); *Yamaha Corp. v. United States*, 961 F.2d 245, 254–55 (D.C.Cir.1992) ("[p]reclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first." (citing Wright, Miller & Cooper)).

Plaintiffs cite a Sixth Circuit case that stated that preclusion "may not be invoked where controlling facts or legal principles have changed significantly, or where the circumstances of the case justify an exception to general estoppel principles." *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir.1987). The Court finds no change in legal principles. More critically, the Court finds no change in the controlling facts. In particular, the exact same video segment in question was evaluated by the state court. Additional footage does not "change" the "controlling facts" observed in the video that formed the basis of the state court opinion. The facts presented by Plaintiffs are not new facts, rather they are newly *discovered* facts. The Court has no basis for concluding that these facts were impossible to discover in the state court proceeding. Accordingly, the Court concludes that Plaintiffs did have a "full and fair opportunity to litigate the issue." *Dominguez*, 359 F.3d at 842. Therefore, this final requirement of issue preclusion has been satisfied.

Based on the preceding analysis, the Court concludes that the state court determination that Plaintiffs did not have a reasonable expectation of privacy precludes Plaintiffs from relitigating that issue before this Court. This conclusion disposes of all of Plaintiffs claims before this Court. The Court will therefore grant Defendants' motion for summary judgment and deny Plaintiffs' motion for partial summary judgment based on issue preclusion. Accordingly, the Court does not need to reach the issue of whether the claims are also precluded based on other issues that were decided by the state court or adjudicate the merits of the claims.

## IV. SANCTIONS

The only issues remaining before the Court are the parties' cross motions for sanctions based on Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. The Court previously recited the standard for evaluating motions for sanctions in a prior opinion in this case. *Bowens*, 254 F.Supp.2d at 645–46. The Court has reviewed both motions for sanctions. Regarding Plaintiffs' motion, Plaintiffs allege that Defendants' briefing contains blatant misrepresentations, but does not articulate the precise claims that Plaintiffs consider

to be misrepresentations. Without more specificity, and given the fact that the Court has granted Defendants' motion, the Court does not consider sanctions against Defendants to be warranted.

In Defendants' motion for sanctions, Defendants argue that Plaintiffs' claims are based on falsehoods and legal deficiencies. In particular, Defendants note that another officer involved in the conversation at issue chose not to join the lawsuit because he "knowingly knew that [he] was being taped." Kohls Dep. at 7–8. Defendants also claim that it was obvious that Defendants had no tortious or illegal purpose for the taping, and that Plaintiffs should have dropped the suit based on *res judicata.* While this is a closer case for sanctions, the Court, having considered Defendants' claims and the contentious context of this vigorously advocated case, will also deny Defendants' motion for sanctions.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [docket entry 263] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for partial summary judgment [contained in docket entry 264] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for sanctions [docket entry 285] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for sanctions [docket entry 284] is **DENIED**.

**SO ORDERED.**