NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0016n.06
Filed: January 8, 2007

No. 05-2649

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHERYL HUGHES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| GENERAL MOTORS CORPORATION, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellee. | ) | |
| | ) | |

Before: KENNEDY and GIBBONS, Circuit Judges; and ALDRICH, District Judge.[*]

ANN ALDRICH, District Judge. Plaintiff-appellant Cheryl Hughes ("Hughes") appeals

the district court's grant of summary judgment in favor of defendant-appellee General Motors

Corporation ("GM") on Hughes's claims of employment discrimination and retaliation in violation

of 42 U.S.C. § 1981 ("§ 1981"), Title VII of the 1964 Civil Rights Act ("Title VII"), and the Age

Discrimination in Employment Act ("ADEA"). Hughes's federal complaint originally included state

law claims for discrimination, but because the district court declined to exercise supplemental

jurisdiction over those claims, they were resolved in Michigan state court.

Because those state law claims, for discrimination and retaliation on the basis of age, sex and

_____

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1

race, were resolved in GM's favor in state court on the same set of operative facts, issue preclusion bars Hughes's federal claims on appeal, save for one set of claims. The statute of limitations for § 1981 claims is four years, as opposed to the three years for Hughes's Michigan state law claims. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (holding that the statute of limitations for actions brought under 42 U.S.C. § 1981 for discrimination on the basis of race in employment is four years); Mich. Comp. Laws § 600.5805(10) (2002). Therefore, because Hughes filed her complaint in federal court on September 24, 2002, the only claims that have not been resolved by the Michigan courts are those under § 1981 for GM's actions between September 24, 1998 and September 24, 1999.

Because summary judgment was properly granted to GM on all of Hughes's claims, the district court's judgment is **AFFIRMED**.

## I.

Hughes, an African-American woman over forty years of age, was hired by GM in February 1995, at the age of 39, as an associate engineer. Over approximately the next six years, Hughes worked at GM, in various departments, until her termination in August 2001. Hughes has alleged that she was repeatedly discriminated against on the basis of her age, race, and sex, both in terms of different positions for which she applied, and in her allegedly disparate pay as compared to younger, male and/or white workers.

Because of the effect of the resolution of her state law claims for employment discrimination and retaliation on the basis of age, sex, and race in the Michigan state courts, as described *infra* Section III.A., the only alleged discrimination relevant to this claim is that which took place between

September 24, 1998 and September 24, 1999 on the basis of her race. Specifically, Hughes alleges, first, that there were sixteen positions to which she applied during that time frame, where a position for which she was qualified was instead filled by someone white, and that she was not chosen for those positions because of her race, and, second, that she was paid less than similarly situated white co-workers because she was black.

With respect to her failure to promote claim, Hughes applied for seven of those positions prior to her transfer into the Truck Group from the Technical Assistance Group in November 1998.[1] GM, which would be the only source of evidence for which individuals were hired into those positions, if any, what their races were, and when those individuals were hired, has stated on the record that it cannot find that information. Therefore, it is impossible to tell whether the individuals hired for those positions, if any, were white, were qualified, were more qualified than Hughes, or were hired after Hughes had transferred in November 1998, when Hughes was no longer eligible for consideration for those positions. Hughes applied to the other nine positions prior to her transfer into the Vehicle Synthesis Analysis Simulation ("VSAS") division in July 1999.[2] According to GM's discovery responses, two of those positions were not filled until after Hughes's July 1999 transfer, and one of them was cancelled.[3] According to GM, Hughes probably would not have been eligible

---

[1] Joint Appendix ("J.A.") 1616, numbers 64 through 70.

[2] J.A. 1616-17, numbers 71 through 79.

[3] J.A. 292-94. The two positions not filled until after Hughes's transfer were 72 and 73 on her list, while the cancelled position was number 76. J.A. 1616.

for the other six positions because she had spent less than one year in her position at the time.[4]

However, GM has no information on which individuals were hired into those positions, if any, what

their races were, and when those individuals were hired. Therefore, it is impossible to tell whether

the individuals hired for those positions, if any, were white, were qualified, were more qualified than

Hughes, or were hired after Hughes had transferred in July 1999, which would have removed her

from consideration for those positions.

With respect to Hughes's pay, she alleges that her salary at the time was between just over

80 percent to just less than 88 percent of the "market rate" for her position.[5] She also alleges that

she was paid less than similarly situated white individuals in the Technical Assistance Group and

in VSAS.[6] However, between September 24, 1998 and September 24, 1999, all of the individuals

to whom Hughes compares herself received only one salary increase, like Hughes. Hughes's

increase was 10.3 percent of her salary, for an additional $400 per month.[7] None of the individuals

to which Hughes compares herself received a larger increase in salary than she did, either by

percentage or actual amount.[8]

**II.**

---

[4] J.A. 292-95.

[5] J.A. 239.

[6] J.A. 610, 932, 978.

[7] J.A. 934.

[8] Relevant increases were 6.2 percent/$275 monthly (J.A. 938), 2.1 percent/$95 monthly (J.A. 943), 4.7 percent/$210 monthly (J.A. 947), 6.0 percent/$310 monthly (J.A. 980), and 3.78 percent/$200 monthly (J.A. 982).

4

Hughes's appeal raises two issues: (1) whether the district court properly granted GM summary judgment on Hughes's Title VII, ADEA, and § 1981 claims arising out of acts occurring since September 24, 1999 on issue preclusion grounds; and (2) whether the district court properly granted summary judgment to GM on Hughes's § 1981 claims arising out of acts occurring between September 24, 1998 and September 24, 1999.

On summary judgment, our review is *de novo*. *Thomas v. City of Chattanooga*, 398 F.3d 426, 428 -29 (6th Cir. 2005) ("We apply a *de novo* standard in reviewing the district court's grant of summary judgment.") (citing *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000)). If there is no genuine dispute over a material fact preventing judgment as a matter of law, then summary judgment is proper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). On summary judgment, all inferences from the facts must be drawn in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**A.    Issue Preclusion**

The district court granted summary judgment to GM on Hughes's Title VII, ADEA, and § 1981 claims resulting from actions occurring after September 24, 1999,[9] on the ground of issue preclusion based on the resolution of Hughes's state law claims for employment discrimination on the basis of age, sex and race in Michigan state court.

---

[9] The applicable statute of limitations for Hughes's Title VII and ADEA claims is actually *less* than the three years afforded by Michigan's statute of limitations for the state law claims. Therefore, the state courts' resolution of claims based on acts since September 24, 1999, necessarily covers all of Hughes's possible Title VII and ADEA claims, as well as § 1981 claims based on acts from September 24, 1999 to the date of Hughes's termination.

Because the state courts' resolution of Hughes's state law claims required examining the exact same operative facts as her federal claims, issue preclusion or collateral estoppel applies. On the question of issue preclusion, "[i]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). As the state courts in question are Michigan courts, we look to Michigan law. "Under Michigan law, the party asserting preclusion bears the burden of proof." *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004) (citing *City of Detroit v. Qualls*, 454 N.W.2d 374, 383 (Mich. 1990)).

More specifically, "[a] court must apply issue preclusion when 1) the parties in both proceedings are the same or in privity, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated in the first proceeding, 4) that issue was necessary to the judgment, and 5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue." *Dominguez*, 359 F.3d at 842 (citing *Michigan v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990)). The same parties were present in both the state and federal proceedings, and a valid, final judgment in the first proceeding, based on the Michigan Court of Appeals' affirmation of the Michigan trial court's grant of summary judgment to GM, is also present. *Hughes v. Gen. Motors Corp.*, No. 263688, 2006 WL 551348 (Mich. Ct. App. Mar. 7, 2006). Hughes does not dispute that she had a "full and fair opportunity" to litigate her claims and the factual allegations underlying those claims in state court.

In evaluating Hughes's Michigan state law claims of discrimination on the basis of age, sex

and race, the Michigan courts use the same *McDonnell Douglas* burden-shifting paradigm used by the federal courts in evaluating Title VII claims. *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003). Furthermore, the standards governing the grant of summary judgment in Michigan state courts are identical to those governing summary judgment in federal court. Fed. R. Civ. P. 56(c); Mich. Ct. R. 2.116(C)(10). Thus, in affirming summary judgment for GM on Hughes's state law claims, the Michigan courts reviewed and resolved the same issues that would have been resolved in federal court concerning Hughes's Title VII, ADEA, and § 1981 claims, and the state courts' resolution of those issues was necessary to the judgment.

The district court correctly held that because the Michigan state courts granted summary judgment to GM on Hughes's state law claims, Hughes's Title VII, ADEA, and § 1981 claims arising out of acts occurring since September 24, 1999, are barred by issue preclusion.

**B.      Section 1981 Claims**

Hughes admits that she possesses no direct evidence of discrimination on the basis of race with respect to her failure-to-promote and disparate pay claims under §1981 for acts occurring between September 24, 1998 and September 24, 1999. Therefore, her "Section 1981 claims are analyzed under the Title VII *McDonnell Douglas/Burdine* framework." *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989)). Under that familiar approach, Hughes must first establish a *prima facie* case of discrimination by satisfying four elements:

> To establish a prima facie case of discrimination, a plaintiff must
> show that 1) he is a member of a protected class; 2) he was qualified
> for his job and performed it satisfactorily; 3) despite his qualifications

7

> and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

"If the plaintiff is able to [establish a *prima facie* case], a mandatory presumption of discrimination is created and the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the [challenged actions].'" *Id.* at 573 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant can articulate such a reason, "then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). Pretext is established "by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action." *Id.* (citing *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir.1991)). However, "[a] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).

With respect to Hughes's failure-to-promote claim, that she was not hired in sixteen different instances because of her race, the grant of summary judgment in favor of GM is affirmed. Even if the first three elements for a *prima facie* case are taken as established, Hughes cannot produce any evidence establishing that the individuals hired into thirteen of those positions were white. No evidence regarding the thirteen positions still in question appears to exist. And despite Hughes's

request for an adverse instruction as a result of the lack of evidence, such an instruction does *not* help her avoid summary judgment, because there is *no* evidence tending to support an inference adverse enough to meet Hughes's burden or proof. Of the other three positions, two were not filled until after Hughes's transfer into VSAS, and one was never filled at all, establishing legitimate, non-pretextual reasons for not hiring Hughes for those positions as a matter of law.

As a practical matter, given the design of the job listing system in question and the time that has passed since the events in question, it is neither surprising nor blameworthy that GM is unable to fill in these particular blanks. And if the court were to remand the § 1981 failure to promote claim for further proceedings, it is unclear precisely what further proceedings would be possible without evidence supporting either Hughes or GM's assertions concerning those thirteen positions. As a result, the court affirms the district court's finding that Hughes cannot prevail on her failure to promote claims as a matter of law.

With respect to her claims of disparate pay, Hughes has not established a *prima facie* case. GM does not dispute that Hughes was a qualified African-American employee, satisfying the first two elements. With respect to the third and fourth elements, Hughes first attempts to argue that being paid below "market rate" is enough to establish disparate pay. The Sixth Circuit, however, has determined that "to be deemed 'similarly-situated,'" the individuals with whom Hughes seeks comparison "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citations omitted). In other words, the people to whom Hughes wishes to draw a comparison must be similar to her in all relevant aspects. *Clayton v.*

9

*Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (citations omitted). Under that standard, Hughes's "market rate" comparison fails. It does not matter if Hughes was paid below "market rate" if she cannot somehow show that those with whom she is "similarly situated" are paid at or above market, or at least *less* below market than Hughes was.

Hughes's more direct comparisons to co-workers in the Technical Assistance Group and the VSAS division also fail to satisfy the third and fourth elements – that she was paid less, and less than similarly situated white co-workers. During the specified time period, Hughes was actually treated *better* than all of her co-workers in terms of the salary increase awarded. But that single salary increase during the time period does not end the discussion. In this case, Hughes claims that she was, for the relevant time period between September 24, 1998, and September 24, 1999, paid less than all of her co-workers in both the Technical Assistance Group and in VSAS, establishing a *prima facie* claim. However, Hughes has not pointed to any evidence in the record establishing that the individuals listed are indeed "similarly situated" in order for her to draw a comparison. Despite being in the same department, Hughes does not point to any evidence showing that the individuals she lists "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583 (citation omitted). Hughes has therefore failed to satisfy the fourth element for her *prima facie* case, and the district court's grant of summary judgment must be affirmed.

## III.

For the foregoing reasons, the district court's grant of summary judgment in favor of GM on Hughes's Title VII and ADEA claims, as well as on Hughes's §1981 claims based on acts taking

place since September 24, 1998, is **AFFIRMED**.